Good morning and welcome to the Ninth Circuit. I'm Judge Nelson and it's a pleasure to be joined by my colleagues Judge Hawkins and Judge Forrest. We'd also like to welcome counsel who will be arguing today via video technology. We look forward to welcoming you in person into the courtroom, hopefully very soon. We ask that during arguments you please watch your time, keep to your allocated time frames, and try to sum up your argument as time is concluding. Let us know if you'd like to reserve time for argument on rebuttal. We are ready to proceed with the oral argument calendar. Four cases have been submitted. Those are Chun v. City and County of Honolulu, case number 20-16558. Barnes v. Henry, Inc., case number 20-17141. Barnes v. Henry, case number 21-16120. And Ricasa v. State of Hawaii, case number 19-17288. We have three cases scheduled for argument this morning. The first case set for argument is United States v. Nishida, case number 21-10070. And we will first hear from Ms. McMillan. Is that right? Yes. Yes, Your Honor. This is Georgia McMillan. Go ahead. Thank you. May it please the Court, I am Georgia McMillan. I represent the defendant appellant Jeri Nishida on her appeal before this Court. I would like to reserve one minute rebuttal. Okay. I'd like to commence with, I think, the most pivotal issue in our appeal, which has to do with our argument that the District Court vitiated the memorandum of plea agreement waiver of right to appeal. The standard of review is de novo. At the sentencing hearing, we focus on the Court's notice to the appellant after the Court had imposed the sentence. And at that time, the District Court told the appellant, you have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to the law. And that's in our excerpts of record at page 26. We think that the last phrase of that notice is pivotal, Your Honors. That phrase being, particularly if you think that the sentence is contrary to the law. Because from our perspective, that sentence, that phrase sort of opened up the whole gamut of her ability to appeal her sentence. We have a case law from our circuit in which the Court clearly told the defendant at the sentencing hearing that the defendant had a right to appeal his sentence. That was open-ended. Excuse me. That was open-ended, wasn't it? It was not. Well, it was. I'm not sure what Your Honor means by open-ended, but in the Buchanan case... I thought Buchanan said that you could appeal without qualification. And that was how this case should be distinguished, because... Right, you could appeal without qualification in contrast to the other cases cited in the government's brief, the Watson case, Aguilar-Muniz, and in Schuman, where the Court said you may, you might be able to appeal your sentence. Or I believe it was in the Aguilar-Muniz case, the Court said maybe you can appeal... Yeah, but isn't... That seems like that's much more consistent. Those cases are much more consistent. And I think this is what Judge Hawkins was getting at in his question, that those cases seem much more consistent with what happened here. That the judge said there might be some opportunities for you to appeal, but he never said... I mean, can you point us to any language where the judge said you have a right to appeal without qualification, and any appeal as of right you can take? Yes, Your Honor. The judge didn't say, of course, you have a right to appeal without qualification. But the judge said this, you have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to the is the claim that the sentence is contrary to the law. We think that that last phrase is unequivocal. Counsel, didn't the plea agreement tell your client exactly which circumstances an appeal would be warranted or allowed? Yes, Your Honor. The plea agreement was... Which she read and told the Court that she was clear, and at the plea hearing, she told the Court that she understood that. However, our case law, particularly the Buchanan case, as well as the Arias-Espinoza case, tells us that at sentencing, what the sentencing judge says to the defendant concerning the appeal waiver in the sentencing memorandum. And so that is why we are focusing on what the district court said at the time of sentencing last year. What is the page of the record that you just quoted for the language that you're relying on? It's ER 26, Your Honor. All right. So I'm looking at ER 25, and it seems to me that there's additional statements from the district court on page 25 that talk about this same issue. And it's clearly couched in, you've waived appellate rights as part of your plea, but to the extent you haven't waived things, you can still bring an appeal. So I guess I'm sort of asking the same question that my colleagues have asked, and that is, when the district court has said that, has said you've got some appellate rights, but they're only to the extent they survive your waiver, how do you get around the waiver? We think that that comment on page 25, Your Honor, is distinguishable from the comment on page 26. For this reason, the language that you point to, Your Honor, on page 25 goes to appeal of conviction. And then in a separate statement over on page 26, the court addresses the issue of appeal of sentence. And there we think that the court provides a Buchanan-like statement to the defendant, opening up the ability to appeal her sentence. May I mention one more thing about this case and the unique context of this case, and some of the background about why we think this issue is so important. The case is unique because what's intersecting this issue of how to interpret the court's comments at sentencing with regard to appealing the sentence, what's intersecting that is what happened with Attorney Pardington. Going back to a hearing on December 15, the court raised an issue with the defendant about the status of Attorney Pardington's license. And at that time, he had lost his license to practice both in California and before the Ninth Circuit Court of Appeals. He had not lost his license to practice at that point in the state of Hawaii or before the United States District Court Hawaii. And a chief reason why the district court raised the Attorney Pardington issue with the defendant is the court was concerned about the ability to appeal. And so the court commented throughout the hearing on December 15, and then later again on January 6, basically warning the defendant that if you want to appeal, Attorney Pardington cannot help you with the appeal. And the court said this in several occasions. So we think that that overall context of the court continuing to talk about the defendant's right to appeal generally, and then this statement on page 26, which in our opinion opens up the ability to appeal her sentence, is controlled by Buchanan. And we think that the comment vitiated the written memorandum of plea agreement waiver of right to appeal. If we don't agree with your appeal waiver, are there any of the other issues that would survive the appeal waiver, or would that resolve everything? Yes, I agree that our issue concerning the appeal waiver is pivotal. However, Your Honor, the issue that we think clearly survives is the issue concerning the condition of supervised release, the special condition of supervised release number one and number four. With regard to those conditions, the reason why the appeal waiver does not control is that case law tells us that notwithstanding the appeal waiver, there is precedent that says that the defendant can continue to appeal his sentence if, for example, the sentence, the government, or the sentence falls outside of the terms of the plea waiver, or if the sentence is illegal or unconstitutional. With regard to those special conditions of supervised release numbers one and four, those go to unconstitutional error. This is our argument. They go to unconstitutional error because they provide the probation officer with the ability to impose punishment by imposing inpatient drug treatment and inpatient mental health treatment. This is a constitutional violation under Article One of the Constitution because it impermissibly delegates to a non-judicial officer the right to impose punishment, and it's also a constitutional violation because it affects a liberty interest. Okay, you asked for a minute. We'll give you a minute for Mr. Namar. Good morning, Your Honors. Michael Namar, United States. All of Nishita's arguments in this case fall within the scope of her appellate waiver. First, none of the statements made by the district court in this case canceled out the appellate waiver. All of the statements made by Judge Gilmour were consistent with the waiver in this case, and no statements were comparable to the statements in Buchanan where the defendant was clearly told he had the right to appeal. Counsel, can I... Every time... Counsel? Yes. Can I direct you to the issue that we ended off with with your colleague with regard to the supervised release conditions? Why is she wrong that regardless of waiver that that argument needs to be addressed? Your Honor, I do think it should be addressed, but let me talk first about waiver in that respect. Under the controlling case law, you can appeal a sentence if it is illegal, and a legal sentence could be a sentence that's in violation of the Constitution. I still think, though, that we don't have a violation here of the Constitution. I do think that Nishida is claiming that it's an Article III violation because essentially probation is the person who's imposing punishment, but that's not the case here, that probation is the one that would be imposing punishment. We're not saying that probation officer can order the defendant to take part in inpatient treatment. The condition doesn't allow it, and it shouldn't be construed by this Court in that way. Isn't that a fair reading of the language? I mean, I don't know if that's how it works in practice, but a fair reading of that language seems to me that inpatient treatment's on the table, and it doesn't say you've got to go back to court to get approval for that. Well, I think what the Ninth Circuit would say in Daniels and Cope and what the Tenth Circuit has said in Mike is that when you're looking at broad, all-encompassing conditions like the one that we have here, you're to construe them in a manner that does not make them infirm. And when you do that... So I want to follow up with that, because as I read those cases, that rule, the idea that you're going to construe language narrowly to avoid a problem, comes up in the context when the argument is that a court has not made sufficient findings to support a condition. I don't see that rule about narrow construction being applied when the challenge is a delegation challenge. I think that in United States v. Mike, which is a Tenth Circuit case, there was a delegation challenge in that particular case, which is directly on point because that particular provision was about drug treatment. Wasn't it both? And Mike, wasn't it both a findings challenge and a delegations challenge? I believe it was both, Your Honor. My recollection was then that the rule about narrow construction applied to the findings argument and not to the delegation argument. Do I have that wrong? My recollection is that it did apply to the delegation part of it, Your Honor, as discussed in our brief. Also, I think another case that's helpful is United States v. Stevens, which is a Ninth Circuit case. In that particular case, we have a very similar provision where the district court ordered drug treatment. The condition there was silent on inpatient v. outpatient, and this court concluded on page 882 of that opinion that no discretion on the subject was given to the probation officer other than to perform the ministerial task of choosing the appropriate program and facilitating the defendant's attendance. Thus, in Stevens, they found there was no Article III violation of the Constitution. In the Rule 28J letter that counsel submitted, she mentions the state's decision. I want to talk about that decision briefly. Of course, first, that decision is unpublished. It's not precedent, but more importantly, the decision doesn't address the precedent in Daniels and Cope about how this court should analyze all-encompassing conditions. In fact, the state's decision does the opposite of what the court does in Daniels and Mike and Cope because it requires the district court to put explicit limitations on the scope of treatment and the supervised release condition. So, in summary, I think these conditions do not require inpatient treatment, and while the language is broad, it should not be construed to delegate authority to the Probation Department to allow inpatient treatment. I want to go back briefly to... Just to be clear on your argument here, if it were true that inpatient treatment was granted by the probation officer, would you say that he just lacks authority to do that? I mean, is that the government's position so that if this happens, would you say he lacks authority or just he's not required to do it by the term? I would say that he would lack authority to do it. I would also say that, to your question, this is not a situation like the Ninth Circuit had in Esparza where the court explicitly gave the Probation Department discretion on whether to order inpatient or outpatient treatment. Counsel, was this your case in the trial court? I handled it along with another Assistant United States Attorney, Tom Brady. You were present at the time of sentencing? I was, Your Honor. You know, you could have helped us or helped your side of the case by speaking up at that hearing on both of these issues, couldn't you? I mean, you could have said to the district judge on the first issue, Your Honor, with respect, I would like to point out that the circumstances under which the defendant can appeal are clearly set out in the plea agreement, which the defendant has acknowledged and agreed to, correct? I could have, Your Honor. I do think, though, that every time the district judge brought it up, including at sentencing, it was qualified and was always tied back to the appellate waiver in that particular case. I also think the contrary to law statement that opposing counsel points out, it's a term of art and it's accurate. The Ninth Circuit in good all has said that you can't appeal a sentence if it's an illegal sentence. An illegal sentence is essentially one that's contrary to law, one that exceeds the accessible punishment, or one that violates the Constitution. So I don't think that the district court's got it. But you could have said something and cured problems on appeal by pointing out to the judge the constraints in the plea agreement, correct? It's a teaching point. I could have done that, Your Honor. It's a teaching point. I'd just like you to acknowledge, because you're going to encounter this in the future. Understood, Your Honor. You knew prior to sentencing what the court proposed in terms of conditions of special release, correct? I did, Your Honor. At that time, we had not had the state's decision. It had not been challenged in this district yet. But yes, Your Honor, in the future, if we had a condition like this, I would ask that it be more explicit, that it would not allow for any sort of argument on appeal on this particular point. I don't know if Your Honors have any more questions, but that's all the comments that I had for Your Honor. Thank you. Okay. Thank you. We'll hear one minute of rebuttal. Thank you. Thank you, Your Honor. I would just like to address the special conditions of supervised release very quickly. Even though the United States v. Skates decision is unpublished, in that particular case, the exact same language was used in those special conditions of supervised release concerning drug treatment and mental health, and it concerned location, modality, duration, and intensity. And in that case, this court found that the terms did violate the Constitution because they empowered the officer to decide the nature and extent of the punishment. I appreciate the government's issue that, well, it's sort of open-ended and it's subject to interpretation, but I think that's the very problem with these very broad conditions is that down the road, you have a probation officer trying to make a decision, and that decision could run afoul of Article III, also the liberty interest. And so that's why it's so important to tailor these terms precisely. I have nothing further, Your Honors. Okay. Thank you. Thank you to both counsel for your arguments in this case. The case is now submitted, and we'll move on to our second argument for the day, Elizabeth Cornell v. State of Hawaii, Case No. 20-17425.
judges: HAWKINS, NELSON, FORREST